Donald Raymond BARRETT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–91.

Court of Criminal Appeals of Oklahoma.

Jan. 25, 1978.

**1222**

Jeffrey D. Fisher, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Cheryl Ramsey, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Donald Raymond Barrett, hereinafter referred to as the defendant, was charged in the District Court, Tulsa County, Case No. CRF–76–1561, with the offense of Rape in the First Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1111 and § 1114. The case was tried to the court, and a finding of guilt was made. Defendant was sentenced to life imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

Lorena Thompson, victim of the offense, was the State's initial witness. She testified that after a night of heavy drinking, she, her sister, and the defendant, whom the witness did not know, left the 500 Club in the early morning hours of June 10, 1976. The witness stated that she was intoxicated, and fell asleep in the car. She remembered being stopped by the police while in the car, and remembered her sister leaving the car, but asserted that she remembered nothing else until she was awakened when defendant slapped her face. The defendant slapped her several more times, demanding that she take off her clothing, or else he would "knock her damn head off." She observed herself to be in a wooded area, although she did not know where it was. She stated that she removed her clothing out of fear of the defendant. Intercourse then took place against her will, although she manifested no physical resistance. After the act was completed they dressed and the defendant drove to a scenic overlook which the witness recognized to be west of the town of Sand Springs. Another car was at the scenic overlook, whereupon the defendant drove to a second scenic overlook. The defendant again slapped the witness and demanded she remove her clothes. Intercourse then took place. The witness stated that she then told the defendant that she had to urinate, and the defendant let her out of the car. Once outside she ran, stumbling once and skinning her knees. She left her clothing and her purse in the defendant's car, and she was naked from the waist down. She flagged down a vehicle, and was taken to the Sand Springs Police Station.

The witness further stated that she was using a tampon at the time of the attack, and that she did not remove it prior to intercourse. She further stated that she was examined at Claremore Indian Hospital by a Dr. Johnson. Eight days later she was re-examined by Dr. Johnson for bruises on her face, which she stated were caused by the slaps administered by the defendant.

After the testimony of Ms. Thompson, the defendant was permitted to call two doctors out of time. Dr. Johnson examined the witness on June 10th at the hospital. He stated that he found no evidence of the presence of sperm or inflammation or bruises to the genitalia. He further stated that a tampon was in Ms. Thompson's vagina, and that it was unusually positioned, being wedged in sideways and about as far back in the vagina as it could go. A string attached to the tampon, which normally remains outside to facilitate removal, was also totally inside the vagina. Dr. Johnson stated that he could not conclusively state that intercourse had or had not taken place, although the positioning of the tampon was compatible with intercourse. The doctor further noted abrasions to her knees, and, eight days later, swelling and discoloration of her cheek.

Dr. White, a pathologist, gave testimony relative to tests he performed on samples taken from the victim and sent to him by Dr. Johnson. These tests revealed a very low presence of acid phosphatase, a substance present in large amounts in seminal

fluid. Dr. White stated that no acid phosphatase would be present, even if intercourse had taken place, if the male did not ejaculate.

Jess Tabler was the State's second witness. He testified that at approximately 7:15 a. m., June 10th, he picked up Ms. Thompson in the vicinity of the scenic overlook west of Sand Springs, and took her to the Sand Springs Police Station. She was naked from the waist down, and appeared hysterical.

Tulsa County Deputy Sheriff Wisenhunt arrested the defendant for rape. He also stated that the scenic overlook described by Ms. Thompson was in Tulsa County. He further stated that he was shown the place where Ms. Thompson's purse was found, and that the distance from there to defendant's home was one-half mile. He further stated that the scenic overlook is about thirty miles from the defendant's home.

Michael Baumerstar found Ms. Thompson's purse in a ditch in the town of Skiatook. The witness turned the purse over to the police. Hazel Stillwell, dispatcher with the Skiatook Police Department, received the purse from Baumerstar. The State then rested.

State Trooper Terry Childress was the defendant's first witness. At about 5:00 a. m. on June 10th he stopped the car in which the defendant was driving, because the car was moving too slowly. Childress identified Ms. Thompson as being one of two women present with the defendant in the car.

Sharon Roberts was called by the defendant, and she testified that she was in the 500 Club in the early morning hours of June 10th, where she observed Ms. Thompson in a fight with another person. She further stated that she thought the defendant left the club at 6:30 a. m., although she was not totally sure of the time.

The defense then rested.

After the court found the defendant guilty, the State introduced evidence that the defendant had been twice convicted of felony offenses. The court then sentenced the defendant to life imprisonment.

The defendant contends in his first assignment of error that venue was improperly laid in Tulsa County, and that the trial court was therefore without jurisdiction to try the case. He bases his argument on the fact that the location of the first act of intercourse was unknown.

Title 22 O.S.1971, § 124 provides:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

The defendant does not challenge the fact that the second incident occurred in Tulsa County. The victim testified that it took place at a scenic overlook west of Sand Springs, and Deputy Wisenhunt gave testimony indicating that these overlooks were within the boundaries of Tulsa County, although he could not pin-point exactly where the boundary was. This was enough. See, *Voran v. State*, Okl.Cr., 536 P.2d 1322 (1975). We are of the opinion that, the second act having been shown to have occurred in Tulsa County, and the location of the first act being unknown to all except the defendant, venue was properly laid in Tulsa County under the aforementioned statute.

The defendant also asserts in his first assignment of error that the information was insufficient to confer jurisdiction on the Tulsa County District Court. This is so, he contends, because that element of the corpus delicti of the crime of rape relating to overcoming the victim's will was shown to have occurred at the first, and geographically unfixed, location of sexual intercourse.

The defendant cites two cases in support of his proposition. In *Application of Poston*, Okl.Cr., 281 P.2d 776 (1955), this Court held that venue was improperly laid in Tulsa County, where the victim was abducted and beaten by the defendant in Tulsa County, but where the rape did not occur until the car had passed into Wagoner County.

In *Smith v. State*, Okl.Cr., 481 P.2d 468 (1971), the rape occurred in an auto as it passed from Sequoyah into Muskogee County, and it was thus held that venue was properly in either.

In the present case, the State proved two separate acts of intercourse, the first in a place unknown, the second in Tulsa County. The defendant's contention that the element of overcoming the victim's will occurred at the first unknown location is not well taken. Ms. Thompson testified that at the scenic drive the defendant slapped her, and order her to remove her clothing, and that she did so and had intercourse with the defendant out of fear and against her will.

Moreover, it is not absolutely necessary that the identity of both counties be known, or for that matter either county, for the Oklahoma Constitution, Art. II, § 20, "Rights of Accused in Criminal Cases," provides in part:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed or where uncertainty exists as to the county in which the crime was committed, the accused may be tried in any county in which the evidence indicates the crime might have been committed. . . ."

The defendant's first assignment of error is therefore without merit.

In his second and third assignments of error, the defendant maintains that the trial court improperly overruled his "demurrer to the evidence," more properly termed a motion for directed verdict, first, because the State failed to show resistance on the part of the victim, and second, because the State failed to corroborate the victim's inherently confused and unreliable testimony. We are of the opinion that these assignments of error are without merit. It is clear from the statement of facts given above that the victim was "prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution." Title 21 O.S. 1971, § 1111.

Further, although we do not find the victim's testimony to be inherently improbable or unworthy of credence, we note that the State did, in fact, introduce corroborative testimony. The man who picked her up after she fled from her attacker was called to the stand. The doctor's testimony, though introduced by the defendant, and though not conclusive, did lend itself to the State's case, especially with regard to the positioning of the tampon. The victim's purse was found one-half mile from the defendant's home, and over thirty miles distant from the place where the last act occurred. And finally, a State Trooper placed the victim in the defendant's car at 5:00 a. m., shortly before the act took place.

In his final assignment of error, the defendant urges two propositions, contending that the Habitual Criminal Statute—Title 21 O.S.Supp.1976, § 51(B)—is unconstitutional on its face, and as applied to him. We have held that § 51(B) of the Habitual Criminal Statute is unconstitutional. See *Thigpen and Henderson v. State*, Okl.Cr., 571 P.2d 467 (1977). We note, however, that the sentence imposed is within the punishment limits permissible for a first offense. It is clearly permissible, and within the provisions of 21 O.S.Supp.1976, § 51(A), which was the proper statute for sentencing. Therefore the defendant's final assignment of error is without merit.

Although the issue of the excessiveness of the punishment was not separately urged, we note that the trial judge's remarks on sentencing were as follows:

"I have perused the statutes concerning punishment and also the most recent statute on punishment in the State of Oklahoma. I think the least the Court is bound by according to the statutes is to give a life sentence to this defendant after former conviction. That is the way I read the statute.

"MR. LaSORSA: That is exactly how the statutes read, Your Honor, verbatim. The Court is precluded from considering any less sentence than that which is directed by the latest statute.

"THE COURT: Until the Court read that statute, I was going to give the defendant 10 or 15 years, but it looks like the Court's hands are tied. I have to follow the law. The legislature saw fit to pass a law and even though I think maybe in certain instances this law would be unjust, by the same token the legislature didn't see it that way and they are the ones that make the law. The Court in turn must follow that law and see that the law is enforced."

In view of the remarks of the trial judge, who had an opportunity to observe the candor and demeanor of the witnesses, and was familiar with the defendant's prior convictions, we are of the opinion that the judgment and sentence should be MODIFIED from a sentence of Life imprisonment to a term of fifteen (15) years, and as so MODIFIED, the judgment and sentence is AFFIRMED.

CORNISH and BRETT, JJ., concur.