Robert Steven WILLIAMS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–13.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1983.

Mac Oyler, Oyler, Smith & Bane, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Deputy Chief, Criminal Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Robert Steven Williams was convicted of First Degree Manslaughter in the District Court of Payne County and received a sentence of six (6) years' imprisonment. Because this conviction must be reversed, we will review only the errors upon which reversal is predicated and those matters which would have a bearing upon a new trial.

The appellant and Scott McAlexander were roommates in Stillwater. They had been close friends for several years, although they did argue from time to time. On the afternoon of November 23, 1979, Richard Brooner had seen the appellant and McAlexander together at Robert Love's house in Stillwater, and he stated that they both seemed to be getting along well at this time. Sometime after 8:00 p.m. on Novem-

ber 23, the appellant returned to Love's house where only Brooner was present. In a very agitated state, the appellant told Brooner that "Scott just tried to kill me. I had to shoot him." He said that he and McAlexander had been discussing money McAlexander owed him for the utilities, and that after he asked McAlexander for the money McAlexander returned to the living room and pointed a sawed-off shotgun at him. The appellant later stated that he thought McAlexander was going to kill him, so he reached for a pistol laying on the coffee table next to him and shot McAlexander once. Thinking that McAlexander was still alive, the appellant persuaded Brooner to return with him to his house. Upon entering the house, Brooner noted that McAlexander was still alive and suggested that they go call someone. The appellant then asked Brooner to take him to the police station, to which they drove and reported the shooting. When police arrived at the house, McAlexander was still alive. He was transported to University Hospital in Oklahoma City, where he later died from a gunshot wound to the head.

At the residence, appellant began explaining the shooting to Officer John Jerkins who had asked him what had happened. At this point, Officer Jerkins stopped the appellant, reported to a senior officer that the appellant was making some statements, and then returned and read to appellant the *Miranda* warning. Richard Brooner testified at the hearing on the motion to suppress that he was present in the room with the appellant and Officer Jerkins at this time. Officer Jerkins confirmed this in his testimony at the preliminary hearing. Brooner testified that after one or two questions, the appellant stated that he wanted to talk to an attorney. Brooner then testified that after a few minutes, Officer Jerkins began asking the appellant questions again, to which the appellant responded. Officer Jerkins testified at the preliminary hearing that he could not remember whether or not the appellant had requested an attorney, what response the appellant made during the reading of his rights, or how it was that the appellant

indicated to him that he understood his rights. He also stated that although the appellant was not under arrest and was in his own home, he would not have allowed the appellant to leave at that point. At the motion hearing, the court granted the appellant's motion to suppress statements made by him to Officer Jerkins at the residence following his request for counsel. However, the court refused to suppress statements made by him to Officer Roger Bastion at the residence immediately following the interrogation of Officer Jerkins described above.

Officer Bastion testified at both the preliminary hearing and at trial that he questioned the appellant in reliance upon the *Miranda* warnings previously given by Officer Jerkins, and that he did not give the appellant any *Miranda* warnings himself. The substance of the appellant's responses to Officer Bastion comprised the majority of the incriminating evidence used by the State at trial, over the appellant's continuing objections.

 From the above facts and circumstances, it is the opinion of this Court that the trial court erred in overruling the motion to suppress appellant's statements to the officers investigating the homicide. It is evident from the circumstances and from Officer Jerkins statement that the appellant was not free to leave the residence at the time of questioning, that appellant was in fact in police custody for all practical purposes. The officer, therefore, properly advised appellant of his right to remain silent and of his right to counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the State has failed to sustain its heavy burden of showing that the appellant knowingly and voluntarily waived his rights. A waiver cannot be presumed from a silent record. *Id.* See also *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Officer Jerkins was unable to recall how appellant responded to the reading of the *Miranda* warning. He does not recall whether appellant ever requested an attorney though there is evidence that Brooner heard

such a demand by appellant after officer Jerkins continued to interrogate. Appellant's willingness to answer questions before and after the warning and after he expressed a need for an attorney, is an insufficient indication of waiver. *Id.*

■ The final error upon which this case must be reversed is the prosecutor's intentional elicitation from Officer Charles Waren testimony regarding the appellant's post-arrest silence at the police station. Over the appellant's objections, the prosecutor was allowed to inquire of Officer Waren on direct examination:

Q. Did Mr. Williams wish to voluntarily speak to the police officer after having been advised of those rights?

A. To the best of my knowledge at this time, yes, sir.

Q. Okay. Did he—Did he ever in your presence indicate that he did not wish to speak about it?

A. Yes, sir.

Q. Where—Where did that occur?

A. In my presence that was at the police department.

Q. At the residence did he ever indicate that he did not wish to speak about the incident?

A. I can't really say on that, sir, because I was not there during all the questioning.

(TR 87).

Although it is unclear whether the appellant was formally under arrest at the time he expressed his desire to not speak to the officers, and although the appellant was later allowed to leave the police station, he was clearly in police custody at the time. He was then a suspect in the shooting of Scott McAlexander and the police investigation had focused on him. At the preliminary hearing, Officer Bastion testified that while appellant was at the police station following the initial investigation at the crime scene, he advised appellant that appellant was probably going to be held in custody. Therefore, we think that the appellant's fundamental constitutional rights were violated when this testimony was admitted. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Neal,* 604 P.2d 145 (Okl.Cr.1979).

■ The appellant additionally raises an assignment of error concerning the admission of certain evidence allegedly seized during illegal warrantless searches. These items were a .32 Special Charter Arms revolver, a sawed-off shotgun, a blood-spattered notebook, and various photographs taken at the crime scene. We find that the revolver, shotgun, and notebook were all in plain view to the police officers who were in a place where they had a right to be. *Tucker v. State,* 620 P.2d 1314 (Okl.Cr.1980); *Clayton v. State,* 555 P.2d 1310 (Okl.Cr. 1976). There being no "search" as to these items, the appellant's arguments concerning an illegal search are without merit. Further, the photographs of the crime scene were taken pursuant to investigative procedure after the appellant had consented to the officers' entry into his home. Any question as to the "staging" of these photographs was thoroughly explored at trial and went to the weight, not the admissibility, of the photographs. The appellant's remaining allegations concerning an illegal search the day following the shooting are not properly before this Court as no evidence was seized as a result of this search.

Therefore, and for the foregoing reasons, the judgment and sentence is REVERSED and REMANDED.

BRETT, J., concurs.

BUSSEY, P.J., not participating.