Alex Fredrick ROWE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-84-587.

Court of Criminal Appeals of Oklahoma.

May 22, 1987.

Terry J. Hull, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Alex Fredrick Rowe, was convicted of First Degree Rape, Forcible Sodomy, and First Degree Burglary, After Former Conviction of a Felony, in the District Court of Rogers County, Case No. CRF-83-202. The appellant was sentenced to one hundred fifty (150) years imprisonment for the rape, one hundred fifty (150) years imprisonment for the sodomy and fifty (50) years imprisonment for the burglary, the sentences to be served consecutively. The appellant was also sentenced to pay a Two Thousand Five Hundred Dollar ($2,500.00) victim's compensation assessment. We affirm.

At approximately 1:00 p.m. on the day of the offense, the victim, F.C.B., a nurse who regularly worked a hospital night shift, was asleep in bed when she was awakened by a noise in her house. She looked across her bedroom and saw a man, whom she later identified as the appellant, standing in the doorway. The man ordered her to turn over and, when she hesitated, walked toward her and threatened her. F.C.B. looked straight at the man as he approached, and when he reached the side of the bed, she turned over. The man grabbed her by the back of the neck and began dragging her out of bed. At that point, the victim noticed the man was wearing tennis shoes and that the toe of the left shoe showed considerable wear and was a different color. The man forced F.C.B. to accompany him while he searched the rest of the house. He then took her into the kitchen and told her to remove her clothes. When she took off her nightshirt, he pushed her to the floor, tied the shirt over her eyes, forced her to commit oral sodomy and then raped her. After the rape, the assailant tied the victim to a kitchen chair and proceeded to search the house for valuables. At one point, he brought a child's piggybank to the victim and asked her how to open it. When the man finally left,

F.C.B. was able to free herself and call the police. The subsequent police investigation indicated that the assailant had entered the victim's house by breaking through an inside door to the garage. After the police had completed their initial inquiry, they escorted F.C.B. to a hospital for a rape examination. The examination revealed the presence of spermatozoa in her vagina.

The appellant was subsequently arrested in connection with an unrelated charge. Following his arrest, the appellant waived his right to silence and answered a number of the arresting officer's questions, including one in which he made an incriminating statement about disposing of the piggybank. After answering several questions, however, the appellant suddenly stopped responding and later affirmatively reasserted his right to silence. The arrest also resulted in the seizure of a pair of the appellant's tennis shoes. The shoes were identified by the victim as matching those worn by her assailant.

At trial, it was revealed that the appellant's brother had loaned the appellant his car on the day of the offense. The car was observed sitting empty only a mile from the victim's house for approximately an hour, near the time when the offense was committed. Later, a passing motorist saw a man running toward the car. When the motorist slowed to ask if he could be of assistance, the man jumped into the car and ducked down so that his face could not be seen.

In defense, the appellant offered an alibi. His girlfriend testified that on the day of the offense, the appellant had picked her up at work. According to her, the appellant arrived at approximately five minutes to one o'clock, her normal quiting time, and waited for her until 2:00 p.m. The girlfriend's employer also testified that she had seen the appellant waiting.

## I.

In his first assignment of error, the appellant contends that the evidence presented at trial was insufficient to support the jury's verdict. Specifically, the appellant

argues that the results of the rape examination contradicted the victim's claim of oral sodomy because it disclosed no evidence of spermatozoa in the victim's mouth. He also claims that the evidence of identification was too conflicting to establish that the appellant was the assailant beyond a reasonable doubt. We disagree.

When there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict, since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Jones v. State*, 468 P.2d 805 (Okl.Cr.1970). The standard for this Court's review of the sufficiency of the evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985); and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Therefore, the fact that there may have been conflicting evidence relating to the assailant's identity is not sufficient to render the jury's verdict a nullity. In addition, the mere fact that the oral portion of the rape examination failed to reveal the presence of spermatozoa in the victim's mouth is not sufficient to justify a reversal. The victim testified that the oral sodomy was brief and the assailant had only ejaculated in her vagina. Moreover, the discovery of the appellant's distinctive tennis shoe and his post-arrest statements relating to the piggybank were highly inculpatory. We find that there is ample evidence to support the jury's verdict. Accordingly, this assignment of error is without merit.

## II.

In his second assignment, the appellant contends that the trial court erred both in refusing to suppress the identification testimony of the victim and in refusing his request for a cautionary identification instruction. Again, we disagree.

## A.

■ Appellant argues that the victim's initial observation of the assailant at the time of the attack was inadequate and that her subsequent trial identification was tainted by improper pre-trial confrontations. We first note that while the appellant alleges certain irregularities, there was no evidence presented at trial which would indicate that the victim's line-up identification was conducted improperly. In addition, the preliminary hearing identification was conducted in the standard manner. Accordingly, there does not appear to be any taint which might render the victim's in-court identification inherently unreliable. Therefore, there was no basis for the suppression of the testimony. *Mason v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ Even if we did consider the pre-trial identification procedures to be improper, there would still be no basis for suppression of the victim's in-court identification. Contrary to the appellant's assertion, the victim's opportunity to view the assailant at the scene of the crime, while not extensive, was adequate. The record reveals that the victim was awakened from a sound sleep, was taking a prescribed drug for migraine headaches, was not wearing her glasses and was in a bedroom with partially closed shades. However, she testified that she was fully alert, that there was ample sunlight in the room and that she did not need her glasses for short viewing distances. In addition, she had sufficient time to view her assailant, her description was accurate, the length of time between the rape and the initial confrontation was less than twenty-four hours, and her initial identification was positive. *Cf. Mason, supra.* We find that the victim's in-court identification was sufficiently reliable and was properly admitted into evidence.

## B.

■ Appellant also contends that in the absence of suppression, the trial judge should have issued a requested cautionary identification instruction. This Court re-

cently reversed a similar case because of a failure to give a cautionary instruction. *See McDoulett v. State*, 685 P.2d 978 (Okl. Cr.1984). However, in *McDoulett*, this Court specifically found that the witness was not in a position to clearly observe her assailant at the scene of the crime and that her prior description was inaccurate. Here, as previously noted, the victim's opportunity to view her assailant was adequate and her prior description was accurate. In addition, she never failed to identify the appellant and she was always positive in her identification. *Cf. Moreau v. State*, 530 P.2d 1061 (Okl.Cr.1975). Therefore, the trial court's refusal to issue a cautionary identification instruction was not improper.

### III.

█ In his third assignment of error, the appellant contends that his sentence should be modified because the jury was improperly informed of two different prior convictions which were based on acts committed during a single criminal incident. Appellant previously had been convicted of a burglary and an attempted sexual battery. Because both convictions arose out of a single episode, the State had elected to rely on the attempted sexual battery to support the former conviction charge. *See* 21 O.S. 1981, § 51. Although the appellant had agreed to stipulate to the prior attempted sexual battery, the trial judge inadvertently read the burglary conviction to the jury. Appellant immediately objected, moved for a mistrial, asked that the jury be admonished and that the statement be stricken from the record. The trial judge denied the motion for mistrial, but sustained the objection and directed the jury to totally disregard the inadvertent slip. The judge then proceeded to read the prior attempted sexual battery conviction and the case was submitted to the jury on that basis.

While it was error for the trial judge to read both of the prior interrelated convictions to the jury, this Court has held many times that a proper admonition will cure any error which is not fundamental. *Nash v. State*, 685 P.2d 972 (Okl.Cr.1984). Because of the withdrawal of the burglary

charge and the admonition to the jury, this case differs from the cases where the jury is permitted to improperly consider all prior interrelated convictions. *Cf. Miller v. State*, 675 P.2d 453 (Okl.Cr.1984). Given the nature of the appellant's crimes and his prior conviction for a sexual offense, it is impossible for this Court to say that the trial judge's inadvertent error affected the sentencing verdict. *Cf. Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973). Therefore, this assignment of error is without merit.

### IV.

█ Fourth, the appellant contends that the trial court's second stage verdict forms violated his right to have the jury determine the issue of former conviction. Specifically, the appellant claims that the trial judge failed to submit forms authorizing the jury to find the appellant "not guilty after former conviction of a felony" and only submitted forms for "guilty after former conviction." Appellant is mistaken. A search of the record reveals that the trial judge submitted second stage verdict forms which permitted the jury either to find the appellant guilty of each count alone and fix his punishment or to find him guilty of each count after former conviction of a felony and fix his punishment. These are the only two options open to a jury after a defendant has been found guilty of the primary offense at the first stage of trial and evidence of a former conviction has been presented at the second stage. Since the jury was provided with adequate verdict forms, the appellant has failed to demonstrate error. *Cf. Webster v. State*, 96 Okl.Cr. 44, 248 P.2d 646 (1952).

### V.

█ In his fifth assignment of error, the appellant contends that his Fifth and Fourteenth Amendment rights were violated when the prosecutor intentionally elicited testimony concerning his post-arrest silence. We disagree.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the fact

that an arrestee remained silent, even in the face of an accusation, was not admissible as evidence of his guilt. *See also Dungan v. State*, 651 P.2d 1064 (Okl.Cr.1982). In this case, however, the appellant did not remain silent. He specifically waived his right to remain silent and agreed to cooperate in the investigation. He answered several of the arresting officer's questions and then suddenly stopped talking. It was this sudden stoppage which was elicited during the testimony of the officer.

Undoubtedly, an accused who has agreed to talk may revoke his waiver and reassert his right to silence. *Miranda v. Arizona, supra.* In a case in which an accused has reasserted his right to silence, a comment on the reassertion may result in reversal. *Williams v. State*, 673 P.2d 164 (Okl.Cr. 1983). Here, for example, testimony as to the appellant's later affirmative reassertion of his right to silence at the police station would have been reversable error. *Id.* In this case, however, the appellant had waived his right to silence and did not effectively reassert it until his silence made it apparent that he no longer wanted to cooperate. Therefore, we hold that the State is entitled to elicit testimony concerning his sudden failure to respond.

### VI.

Next, the appellant contends that he was denied his Sixth Amendment right to effective assistance of counsel at trial. Appellant cites five instances in which he alleges that trial counsel's performance fell below the objective standard of reasonableness required by the United State Supreme Court's decision in *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, it is alleged that defense counsel failed to preserve a withdrawn State's exhibit for appellate review; second, that he elicited testimony undermining an alibi witness; third, that he failed to object to the State's intentional elicitation of testimony as to the appellant's post-*Miranda* silence; fourth, that he made a concilitory final argument; and, finally, that he allowed incomplete verdict forms to go to the jury.

In order to succeed on a claim of ineffective counsel, an accused must demonstrate unreasonable performance and prejudice. *Strickland, supra.* Reasonable assistance is determined by considering all of the circumstances of the case and there is a strong presumption of competence. *Id.* In establishing prejudice, however, an accused need not show that the conduct more likely than not altered the outcome, but only that there is a reasonable probability of a different outcome. A reasonable probability is one which is sufficient to undermine confidence in the jury's verdict. *Id.*

Here, the appellant fails to demonstrate an unreasonable performance. The appellant's allegation of a failure to preserve a withdrawn State's exhibit relates to a line-up photograph which the appellant claims would show an improper initial identification. However, the record discloses that the trial court examined the propriety of the line-up at an identification suppression hearing and found it to have been a fair procedure. According to the appellant, the photograph shows the line-up order with the appellant standing second from the right. Appellant states that at the time the victim made her line-up identification, another man occupied that position and the line-up order was switched either before or after the photograph was taken. Although the appellant claims to have a witness to the switch, no such evidence was presented at trial. Thus, even if the photograph had been preserved, it would have no effect on our decision. Accordingly, the failure to preserve the photograph was not unreasonable.

Counsel's alleged undermining of the appellant's alibi occurred during redirect examination after the State's cross-examination of the defense witness. The State had attempted to impeach the witness by asking her why she had not told the police about the alibi when the appellant was arrested. The implication was that the story had been fabricated at a later time. The rebuttal brought out the fact that the witness had related the story to defense counsel only three days after the incident. Ap-

pellant's claim that this rehabilitation indicated to the jury that defense counsel thought so little of the story that he failed to relay it to the police is unpersuasive.

Appellant's claim of conciliatory argument is also misplaced. He alleges that trial counsel repeatedly argued against the appellant's interests. For example, in one instance counsel argued: "I think that if in fact there had been one single fingerprint out of that residence ... it would have told us beyond a reasonable doubt to a moral certainty that the intruder was Alex Rowe." Taken out of context, the argument does look conciliatory. However, although the argument was inartfully phrased, the record indicates that counsel was actually attempting to point out the weaknesses in the State's case. He told the jury, in effect, that the total lack of any physical evidence against the appellant, when taken in conjunction with his strong alibi, must give rise to a reasonable doubt of guilt. The argument was not conciliatory.

Finally, as we have previously determined in Propositions IV and V, there was no error involved in either the testimony as to the appellant's sudden failure to respond to the arresting officer's questions or in the submission of the verdict forms. Therefore, it was not unreasonable for counsel to fail to object. This assignment of error is without merit.

## VII.

Finally, the appellant contends that the trial court abused its discretion by failing to grant the appellant's request for a pre-sentence investigation, by refusing to grant his motion for concurrent sentences, and by imposing an excessive victim's compensation assessment. We disagree.

### A.

At the conclusion of the appellant's trial, the judge told the appellant that he was entitled to a pre-sentence investigation. In reply, the appellant's counsel stated: "if the court please, after discussing the matter with the defendant, it would be my understanding, unless the defendant has changed his mind, that a waiver of pre-sentence investigation and report would be signed and filed at this time." Appellant apparently had changed his mind, and, after a discussion with counsel, stated that he wanted a pre-sentence investigation. The trial judge agreed to his request.

An examination of the record now reveals, however, that a signed waiver was actually filed on the last day of the appellant's trial. Moreover, at the subsequent sentencing hearing, no mention of a presentence investigation or report was made by either the court, the appellant or his attorney. Although the record is somewhat ambiguous, it appears that the appellant changed his mind a second time and decided to sign the pre-sentence waiver after all.

A convicted person is clearly entitled to waive his right to a pre-sentence investigation. See 22 O.S. 1981, § 982; and *Sarsycki v. State*, 540 P.2d 588 (Okl. Cr.1975). The record in this case appears to reflect an intentional and knowledgeable relinquishment of the appellant's right to a presentence investigation. Therefore, the trial judge did not abuse his discretion in failing to order an investigation and report.

### B.

The appellant also contends that his sentences should have been made to run concurrently rather than consecutively. The decision to require sentences to run consecutively rests in the sound discretion of the trial judge. *Lloyd v. State*, 654 P.2d 645 (Okl.Cr.1982). When a defendant has been charged with separate and distinct crimes, consecutive sentences may be imposed, even though the crimes were committed during a single criminal episode. *Carpenter v. State*, 668 P.2d 347 (Okl.Cr. 1983). Considering the circumstances in this case, the trial judge did not abuse his discretion by ordering the appellant's sentences to be served consecutively.

### C.

Finally, the appellant contends that since he is indigent, the trial judge erred by

imposing a victim's compensation assessment of $2,500.00. In *Jones v. State,* 682 P.2d 757 (Okl.Cr.1984), however, this Court held that when the assessment is not due until the person convicted is released from custody, it is premature to raise the issue on direct appeal.

Furthermore, at the time the appellant was sentenced, 21 O.S. 1981, § 142.18(A), provided as follows:

> In addition to the imposition of any costs, penalties or fines imposed pursuant to law, any person convicted or pleading guilty to a felony involving criminally injurious conduct shall be ordered to pay a victim compensation assessment of at least Twenty-five Dollars ($25.00), but not to exceed Ten Thousand Dollars ($10,000.00), for each crime for which he was convicted. In imposing this penalty, the court shall consider factors such as the severity of the crime, the prior criminal record, and the ability of the defendant to pay, as well as the economic impact of the victim compensation assessment on the dependents of the defendant.

In this situation, it appears that the trial judge considered all of the listed statutory factors when he made his compensation assessment. Since the assessment is not currently due and payable, the appellant has therefore failed to demonstrate an abuse of the court's discretion. *Cf. Vigil v. State,* 666 P.2d 1293 (Okl.Cr.1983). This assignment of error is, therefore, without merit.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in results.