**Gary Dean CHILDERS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–86–457.**

Court of Criminal Appeals of Oklahoma.

Nov. 9, 1988.

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Gary Dean Childers, was tried for First Degree Rape (21 O.S.Supp. 1984, § 1114) (Count I), and Forcible Sodomy (21 O.S.Supp.1982, § 888) (Count II), After Former Conviction of a Felony (21

O.S.1981, § 51), in Mayes County District Court, Case No. CRF–85–63, before the Honorable William Whistler, District Judge. The jury found him guilty on both counts, but did not convict him after former conviction. Punishment was set at twenty (20) years imprisonment on each count. Judgment and sentence was imposed accordingly, except the sentences were ordered to run consecutively, rather than concurrently as recommended by the jury. We affirm.

The prosecutrix, fifteen-year-old M.K.J., met appellant in mid-May of 1985. On May 23, 1985, appellant called Tulsa Police Detective George Haralson, said he had information on a pornography ring, and that the F.B.I. told him to call. Later that day, appellant, accompanied by M.K.J., met Haralson. Appellant offered to help in an undercover operation, suggested using M.K.J. because the pornographers wanted to make a film with her, and said M.K.J. was sixteen. Haralson refused to use M.K.J. without parental consent. Appellant then agreed to wear a body mike and testify, so M.K.J.'s assistance would not be necessary. Haralson called the F.B.I., and confirmed appellant had formerly worked with them as a paid informant.

Appellant called Haralson that night, stating he had arranged to buy two pornographic videotapes the next day for $75.00 each. On the morning of May 24, 1985, in response to appellant's request for her help, M.K.J. accompanied appellant to a Waffle House, where they ate breakfast. Afterwards, M.K.J. changed into a red and white one-piece short set, which she had brought at appellant's request, because he said she would look more like making a movie. Next, they drove to a police station. After much discussion, Detective Haralson reluctantly agreed to put the body mike in M.K.J.'s purse, in case appellant was patted down by the pornographers, but insisted that M.K.J. stay in the car. Appellant planned to make the buy from his driver's window. Haralson told appellant a maximum of $1,200.00 was available for him depending on the quality of his information. The agreed upon plan called for appellant to meet the suspects at a nearby Waffle House and buy the pornographic videotapes in the parking lot. The conversation would be picked up by the microphone in M.K.J.'s purse, monitored from a nearby location, and undercover officers would be in the Waffle House. Haralson gave appellant $150.00 cash to purchase the videotapes.

Appellant took M.K.J. to K–Mart, where he bought her nail polish, lip gloss, and a swimsuit. He drove to a bar called "Koko's" where he called the police. He drove to a different "Koko's" where he made another call, told M.K.J. it was the wrong bar, and said they were supposed to drive to Owasso.

Appellant did not show up at the Waffle House as planned. Haralson received a call from appellant who said the pornographers told him to go to a bar called "Koko's", which he did. Haralson told appellant to stay there, but when he arrived appellant was gone. Appellant called again and left an Owasso address, which turned out to be a vacant lot. Haralson next saw appellant in custody in Rogers, Arkansas.

After leaving Tulsa, appellant and M.K.J. stopped at a place called Spring Creek, where appellant told M.K.J. to act like his girlfriend, in case the pornographers appeared. M.K.J. became suspicious and said she was going to stretch her legs. When she walked over to some bushes, appellant followed her. Appellant tried to pull down her one-piece strapless short set, and M.K.J., who only wore panties under it, pulled it back up. During an ensuing struggle, M.K.J. choked appellant, who choked her back, and then pulled a knife. M.K.J. said she was unaware he had the knife, although earlier he had told her not to worry about the pornographers because he had a .357 magnum in his boot. While she never saw the gun, she was afraid he had one and would use it if provoked. Appellant pushed the knife blade against her throat, and cut her. He threatened to kill M.K.J. "if he had too." At this point, M.K.J. quit struggling, appellant finished taking her clothes off, and M.K.J. submitted to sexual intercourse with appellant.

Appellant forced M.K.J. naked to the car where he put a rope around her neck, said it was her leash, that she was his slave, and that she must earn her clothes. He inserted a daiquari bottle in her vagina, forced her to go up and down on it, and stuck his finger in her anus. He positioned M.K.J. so her head was in his lap and, while he drove, made M.K.J. orally sodomize him. Shortly, appellant stopped the car, led M.K.J. from the car with the rope, forced her to sit with her knees on the front bumper facing the car, and had sexual intercourse with her. He then let M.K.J. put on the swimsuit he had bought her. Following several brief stops, appellant drove to Rogers, Arkansas, where he rented a motel room. That night, appellant forced M.K.J. to orally sodomize him and have intercourse.

The next day, May 25, 1985, appellant went to a car lot to trade cars and obtain cash. M.K.J. said she was going to the bathroom. Instead, she found the sales manager, Buddy Wright, who testified that M.K.J., who appeared nervous and emotionally upset, stated appellant had kidnapped and raped her. Mr. Wright notified the police, who arrested appellant a short time later. John Weaver, a car salesman who assisted appellant, testified appellant appeared nervous about M.K.J. going to the bathroom, and kept looking for her. Appellant told Weaver M.K.J. was his mentally retarded daughter. Sergeant Virgil Kamp of the Rogers, Arkansas, police department, found a knife, State Exhibit 1, in appellant's back pocket. M.K.J. identified State Exhibit 1 as the knife appellant used during the initial rape attack.

Later that day, M.K.J. went to Rogers Memorial Hospital where Margaret Finn, a registered nurse, assisted a physician in doing a rape kit. Rebecca Rush, a forensic chemist with the Tulsa Police Department, evaluated the rape kit. She testified that the vaginal and rectal swabs were positive for the presence of prostate acid phosphatase, which indicated the presence of seminal fluid, but the oral swab was negative. She stated the positive test on the rectal swab did not necessarily indicate anal intercourse, but was probably due to vaginal discharge. She found no spermatoza in any of the samples. Based on her evaluation of the rape kit samples, in Ms. Rush's opinion, M.K.J. had recently had sexual intercourse. At trial, on cross-examination, M.K.J. denied having sexual intercourse with anyone other than appellant between May 22–25, 1985.

Appellant presented four character witnesses who said he did not have a reputation or propensity for violence.

## I.

■ Appellant first claims reversible error occurred when two or three jurors saw him in handcuffs in the hall outside the courtroom. We disagree. This case is distinguishable from *Davis v. State*, 709 P.2d 207, 209 (Okla.Crim.App.1985), which involved a direct violation of 22 O.S.1981, § 15, because the defendant was shackled in the courtroom during trial without a waiver or a showing of disruptive conduct. The brief fortuitous encounter outside the courtroom here does not constitute reversible error, absent a showing of prejudice. *See Snyder v. State*, 738 P.2d 548, 550 (Okla.Crim.App.1987). Further, appellant personally waived any error in this regard at trial. (Tr. 468–69) This assignment is meritless.

## II.

■ In his second assignment of error, appellant asserts the trial court erred in refusing to appoint an investigator at public expense. The United States Supreme Court's landmark decision in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed. 2d 53 (1985), has not been extended to investigative assistance. *See Standridge v. State*, 701 P.2d 761, 764 (Okla.Crim.App. 1985). A detailed discussion of this issue is not necessary, as we find that appellant has not shown substantial prejudice from the lack of investigative assistance, and thus his contentions must be rejected for the same reasons given in *Munson v. State*, 758 P.2d 324, 330 (Okla.Crim.App. 1988).

### III.

■ In his third assignment of error, appellant complains that the State failed to give a *Burks* notice of other crime evidence. No such notice is required if the other offenses are part of the *res gestae* of the crime charged. *Burks v. State,* 594 P.2d 771, 774 (Okla.Crim.App.1979). Here, the sexual assaults all occurred between the time appellant raped M.K.J. at Spring Creek and her escape from him the next morning. We find the sexual assaults were so closely connected as to comprise an integral part of the entire transaction and were therefore admissible under the *res gestae* exception to the *Burks* notice requirement. *See Williams v. State,* 754 P.2d 555, 556 (Okla.Crim.App.1988); *Raymond v. State,* 717 P.2d 1147, 1150 (Okla. Crim.App.1986). This assignment is without merit.

### IV.

■ Appellant next argues the prosecutor improperly invoked societal alarm during second stage closing argument thereby warranting a modification. The comment was not preserved for appellate review with a timely specific objection, and is thus reviewable for fundamental error only. *See Cunningham v. State,* 748 P.2d 520, 523 (Okla.Crim.App.1987). Considering the sentence imposed and the fact that the jury refused to find appellant guilty after former conviction of a felony, the comment was not inflammatory and did not constitute fundamental error. Any error was cured by a subsequent admonishment of the jury by the trial judge. *See McLeod v. State,* 725 P.2d 877, 881 (Okla.Crim. 1986). This assignment is meritless.

### V.

■ In his fifth assignment of error, appellant contends the trial court erred in not ordering the sentences to run concurrently as recommended by the jury. The decision of whether to order sentences to run consecutively rests in the sound discretion of the trial judge. *Rowe v. State,* 738 P.2d 166, 172 (Okla.Crim.App.1987). Under the circumstances here, we cannot say the trial judge abused his discretion. *Id.* This assignment is without merit.

### VI.

■ Appellant next challenges the trial court's refusal to excuse Jurors Rabbit, Davenport, and Waldon for cause. Our review of the record has not revealed an abuse of discretion by the trial judge in refusing to excuse these jurors for cause. *See Bewley v. State,* 695 P.2d 1357, 1359 (Okla.Crim.App.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985); *Saugstad v. State,* 642 P.2d 616, 617 (Okla. Crim.App.1982). Further, defense counsel excused Rabbit and Davenport with peremptory challenges. Appellant has not shown that the refusal to excuse Rabbit and Davenport for cause reduced his peremptory challenges to his prejudice. *See Hawkins v. State,* 717 P.2d 1156, 1158 (Okla.Crim.App.1986). Appellant also claims defense counsel was ineffective in failing to excuse Juror Blasiar by peremptory challenge, because she stated that a friend's daughter had been raped and murdered and, as a mother, she always has a fear that "something like that could happen to my daughter." Ms. Blasiar stated that she could set aside the foregoing, and base her decision on the evidence presented. She stated she would require the State to prove appellant guilty beyond a reasonable doubt, and grant him the presumption of innocence. Appellant has not established the required deficient performance or prejudice. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). This claim is without merit.

### VII.

■ Appellant next claims the State failed to prove venue. The record shows that while the prosecutrix could not testify which county the initial rape occurred in, she accompanied Mayes County Deputy Sheriff Rick Lane to the Spring Creek area north of Tulsa, where she pointed out where the rape occurred. Deputy Lane testified the area was in Mayes County. M.K.J. testified the oral sodomy occurred a

short distance away from the scene of the initial rape. The State must prove venue by a preponderance of the evidence, by direct or circumstantial evidence. *Rawlings v. State*, 740 P.2d 153, 159 (Okla.Crim. App.1987). We believe the State satisfied that burden. *Id. See Barrett v. State*, 573 P.2d 1221, 1223 (Okla.Crim.App.1978); *Voran v. State*, 536 P.2d 1322, 1324 (Okla. Crim.App.1975).

## VIII.

In his eighth assignment of error, appellant argues that the trial court erred in refusing to grant his motion, filed on November 20, 1985, to remand for furtherance of preliminary hearing after the State endorsed four new witnesses on November 15, 1985, prior to trial on December 4, 1985. Appellant cites *Louder v. State*, 568 P.2d 344, 347 (Okla.Crim.App.1977), and *Dorrough v. State*, 452 P.2d 816, 818 (Okla.Crim.App.1969), in support of his contention. However, these cases do not support appellant's claim. We will not address assignments unsupported by relevant citations of authority. *See Coulter v. State*, 734 P.2d 295, 300 (Okla.Crim.App.1987). Absent a showing of surprise or prejudice, appellant has not established an abuse of discretion. *See Rhodes v. State*, 695 P.2d 861, 863 (Okla.Crim.App.1985).

## IX.

In his final assignment of error, appellant asserts he was denied a fair trial based upon the accumulation of errors. Having found no error, we must reject this contention. *See Geary v. State*, 709 P.2d 690, 695 (Okla.Crim.App.1985).

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.